## Case No. 1,154.

### BEACH v. WOODHULL.

[Pet. C. C. 2.] [1]

Circuit Court, D. New Jersey. April Term, 1803.

TREASON—CONFISCATION—CONSTITUTIONAL LAW—
RETROSPECTIVE LAWS.

1. The act of the legislature of New Jersey of 1778, relative to the sale of the estates of persons attainted of treason, did not authorize a sale of forfeited estates free from incumbrances, and a lien on lands sold under that law continued, notwithstanding a sale.

2. The law of 1783 is a positive bar to the claims of a mortgagee on an estate sold under its authority. This law is retrospective and unjust, but it is not repugnant to the constitution, and the court will not declare it a nullity.

[See Miller v. U. S., 11 Wall. (78 U. S.) 268; Tyler v. Defrees, Id. 331.]

In equity. The bill stated that Stephenson made a mortgage of certain lands to [Richards] the testatrix of the plaintiff in March, 1773, which was duly recorded according to law, the mortgage having been made for securing a debt due to the testatrix. In 1777 the mortgagor died, leaving his heir at law, who under the laws of New Jersey was attainted of treason, for joining the enemy; and the commissioners of forfeited estates

---

[1] [Reported by Richard Peters, Jr., Esq.]

sold the mortgaged premises to the defendant. The bill prayed the foreclosure of the mortgage.

The defendant pleaded, that Stephenson, as a further security, did at the time of executing the mortgage, give his bond for the payment of the debt, in which bond he bound his heirs. That upon the death of the mortgagor, the estate descended upon his heir at law; an inquest was taken in 1779 finding the heir at law to have joined the enemy, which not being traversed, judgment was entered forfeiting all his estate according to the laws of the state. The commissioners sold the same, declaring that the same was sold free of all incumbrances, and it was purchased by the defendant. That the money paid by the defendant was more than sufficient to pay the plaintiff's debt; and that due notice according to law was given, calling upon all persons having claims against this estate to bring them in; but none was made by the plaintiff.

Mr. Stockton, for the defendant, referred to the act of this state of December, 1778, (Wilson's Ed.) p. 67, which forfeits all estates of those who have joined the enemy, upon an inquest found and final judgment entered. By the 16th section, the court of common pleas or two judges may receive demands, within one year against the former owners, which are to be tried in a particular way, and if admitted, to be paid at the treasury. By the act of December, 1783, (Wilson's Ed.) p. 384, any person having demands by mortgage or otherwise against forfeited estates, are to exhibit the same before two judges of the court of common pleas, who are to state and ascertain the same. This demand is within the 16th section of the act of 1778. The words "just and equitable demand" mean mortgage debts; the word demand would of itself be sufficient. Co. Litt. 291, 508; 1 Ld. Raym. 115. If it should be argued, that the word "may" was not compulsory, the following cases may be cited: 2 Salk. 609; 1 Vern. 152; 2 Doug. 526; 2 Vern. 116, 117. It may be said that this was not a debt from the heir, but the following cases show, that when the heir is bound it is his debt at common law. 2 Atk. 205, 609; Vern. The debt descends upon the heir although he is not chargeable without assets. By the 10th section of the law it is declared, that the purchaser shall hold the estate, as the offender held it—now, substantially, the estate, after forfeiture, belongs to the mortgagee, and the mortgage is only a security, 2 Burrows, 978; 2 Doug. 610; 7 Term R. 418. A mortgagee has only a chattel interest. But whatever construction may be given to the law of 1778, that of 1783 is conclusive. The four first sections only apply, to demands which had been adjusted. The 6th section bars the foreclosure of all mortgages, unless the demand has been produced and adjusted. 1 Ves. Jr. 285.

On the other side it was contended, that

by the express provisions of the 5th section of the law of 1778, the state acquired no better estate than the offender had, and this was an estate incumbered with the debt. The state therefore, could pass no better estate to the purchaser. The word "may," when directed to courts or officers is imperative, though otherwise when applied to individuals. What proves that it could not be intended to compel mortgage creditors to abandon their liens, and apply to the treasury is, that if the sum were insufficient to pay all the debts, the creditors were to be paid pro rata, which would have been iniquitous as to mortgage creditors. The fact stated, of the commissioners selling free of incumbrances, is immaterial, as it is not stated that the law authorised them to sell in that way, nor is there any such authority in the law. The act of 1783 is retrospective and unjust, and is therefore void. But, if it is not so, the lien of the mortgage is not destroyed, but in cases where the commissioners sold free from incumbrances. But as the law had not given them a power so to sell, the case never occurred, or could legally occur, where this law could operate. The 6th section only refers to demands which could have been made. Those only could be made, which were against the person, but this was against the land. As to the idea of the heir being bound without assets, the cases below were cited. 3 Bac. Abr. 465; 2 P. Wms. 664. A law which vests all a man's estate in trustees, does not without express words discharge his person. Andrews, 40. An attainted person is still liable to his debt. Cro. Eliz. 516. An equity of redemption is not legal assets, (2 Atk. 290, 294;) and the heir may plead rien per descent, (2 Vern. 61; Amb. 308.) It has been frequently decided in our courts, that when the sale was not made free of all incumbrance, the mortgagee was not barred. When the sale was made free of incumbrance the point has not been decided. But the case of Walter v. Perine, [Case No. 17,121,] in this court, before Judge Chase, was precisely like the present, and was determined in favour of the mortgagee.

[Before WASHINGTON, Circuit Justice, and MORRIS, District Judge.]

WASHINGTON, Circuit Justice. It must be admitted, that the act of 1778, did not authorise a sale free of incumbrance, and that the lien, notwithstanding the sale, still continued under that law. But the mortgagee had an election to abandon his lien, and secure his money from the treasury of the state, if he pleased.

When we come to the act of 1783, it is plain that the four first sections, relate entirely to claims against the treasury only, and not to the right of the creditor against

the estate. The legislature knowing that de jure, the commissioners could not sell free from incumbrances, knew also that de facto, they had done so in many instances, and therefore they say, to those having liens on forfeited estates, if you wish to readjust your demand, once given in, so as to have recourse against the treasury, you must first prove that the sale was free from incumbrance; under an idea perhaps that this having been publicly done, and acquiesced in by the creditor, who, by putting in his claims had consented to look to the state for payment, had abandoned his lien on the land. But the clause of the law has no effect, in my opinion, as to the construction of the fifth and sixth sections; that clause relating exclusively to claims against the treasury, and these to claims against the estate.

Upon the existence of the lien and the liability of the land, the law is positive, plain and unambiguous; no room is left for construction. It is a positive bar to the demand, whether the sale was made free of incumbrance or otherwise. But even if it be a bar only where the sale was free from incumbrance, this is exactly that case. To admit the course of reasoning of the plaintiff's counsel, that it meant cases where sales free from incumbrance were authorised to be made by law, would be to annul the law by construction, for it is admitted, that no previous law had authorised such sales. If a creditor had applied to the treasury he certainly would have been paid, on proving that the sale had been de facto made free from incumbrance, though such a sale had not been authorised, and it would have been no answer to say, that no such sale could legally have been made. How then can such an answer be made in this case, if the fourth clause is to control the construction of the fifth and sixth sections? The law is clearly retrospective and unjust in its operation, but it is not for this court to correct it, or to declare it a nullity. It is not repugnant to the constitution.

I am sorry to differ from the court which decided the case of Walter v. Perine, [Case No. 17,121,] but I must give such an opinion as I think right, not feeling myself bound by any decision given at a circuit court.

MORRIS, District Judge, considered the case of Walter v. Perine as precisely like the present, and that the decision in that case was right.

The court being divided, a case was stated for the supreme court, but no removal to that court took place.